HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRED SALAS,

        Plaintiff,

v.

INDEPENDENT ELECTRICAL CONTRACTORS INC.,

        Defendant.

**CONSOLIDATED**

LEAD CASE NO. 11-1748 RAJ

MEMBER CASE NO. C12-277RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on motions for summary judgment by defendants Independent Electrical Contractors of Washington Educational Training Fund ("IEC") and Integrated Electrical Services, Inc. ("IES"). Dkt. ## 157, 166. Plaintiff Fred Salas is proceeding *pro se*, and opposes the motions.[1]

The remaining claims in plaintiff's operative complaint[2] are: (1) disparate treatment discrimination under Title VII of the Civil Rights Act of 1964 based on race

---

[1] It appears to the court that Salas has only opposed IEC's motion for summary judgment. Dkt. # 174. However, the court will treat Salas's response as a response to both IEC's and IES's motion.

[2] Although entitled "Fifth Amended Complaint," it is only the Third Amended Complaint ("TAC"), and the court will refer to it as such. Dkt. # 123.

ORDER- 1

and national origin; (2) disparate treatment and disparate impact discrimination under the Washington Law Against Discrimination ("WLAD") based on race and national origin; (3) disparate treatment and disparate impact discrimination based on age under the Age Discrimination in Employment Act ("ADEA") and RCW 49.44.090; and (4) race discrimination under 42 U.S.C. § 1981.

Having reviewed the memoranda, declarations, exhibits, and the record herein, the court GRANTS defendants' motions for summary judgment.[3]

## II. BACKGROUND

Salas entered into an apprenticeship program administered by IEC in October 22, 2009. Dkt. # 38 (Salas Decl.) at 1:24. IEC is a nonprofit 501(c)(3) training organization that promotes and supports electrical apprenticeships through classroom training and partnering with electrical employers who provide jobs to participants. Dkt. # 159 (Estes Decl.) ¶ 2. IEC is a trade association, is not a labor organization or union, and does not associate with any national labor organizations or unions. *Id.* ¶ 4. IEC's apprenticeship committee is a nonjoint committee that has employer representatives, but does not have a bona fide collective bargaining agent as a participant. *Id.* ¶ 5. During the time Salas was an apprentice, IEC only had five employees, and currently only has seven employees. *Id.* The apprenticeship program is a four-year program that costs $1,300 per year in tuition and requires 800 classroom hours. *Id.* ¶ 6. IEC also refers the apprentices to independent electrical contracting companies, and the apprentices must complete 8,000 hours of on-the-job training. *Id.* ¶ 7. IEC placed Salas with four different electrical contractors, including defendant IES. *Id.* ¶¶ 8, 12.

Salas worked for IES from August 2, 2010 to August 24, 2010. Dkt. # 38 (Salas Decl.) at 2:4-5. In mid to late August, 2010, IES was scaling down the project on which

---

[3] This matter may be decided on the papers submitted. Accordingly, defendants' request for oral argument is DENIED.

Salas was working, and the General Superintendent for the project began to analyze the IEC-assigned apprentices. Dkt. # 168 (Overfield Decl.) ¶ 13. Since Salas and one other apprentice were the last hired, and Salas had performance issues, the General Superintendent decided to terminate Salas on August 20, 2010. *Id.* Since IES requires at least one week to implement a termination decision, Salas was not informed of the termination on that day. *Id.* ¶ 14. On August 24, 2010, Salas violated IES's safety policies and procedures by opening an energized temporary panel box, and he was terminated on the spot. *Id.*

### III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not

"speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").[3]

## A.  Rule 56(d) Continuance and Spoliation

Plaintiff requests a Rule 56(d) continuance to obtain a declaration from John Hong and to upload and supply minutes of meetings and excerpts from personnel files.  Dkt. # 174 at 21.  Plaintiff filed Hong's declaration on March 4, 2013.  Dkt. # 179.  The court has considered this declaration, as well as the declarations filed by Salas in support of his opposition to the summary judgment motions, declarations referred to in such declarations, and declarations in support of his own summary judgment motions.  Dkt. ## 38, 39, 172, 173, 175, 179, 180, 185, 187.  The court has granted several extensions of the case schedule to allow plaintiff sufficient time to complete discovery.  Dkt. ## 72, Dkt. # 133 at 9-10. The court finds that plaintiff has failed to demonstrate that a Rule 56(d) continuance is warranted at this time.  Accordingly, the court DENIES plaintiff's motion for extension of time.  Dkt. # 175.

Plaintiff argues that in his attempt to determine whether the policies of IEC had an adverse impact on minorities, he has encountered suspicious lapses in the data.  Dkt. # 174 at 7.  Poor record-keeping is not spoliation of evidence.  Plaintiff admits that he reviewed the files of 483 apprentices.  However, there were approximately 800 personnel files subject to the court's order on plaintiff's motion to compel.  *See* Dkt. # 133.  The court has no evidence of spoliation, and plaintiff's argument of spoliation is unfounded.

---

[3] To the extent any party has made reference to prior briefing or argument that the court did not rule on, the court has not considered it in connection with defendants' motion for summary judgment.

ORDER- 4

**B. IEC Is Not Subject to Title VII, the ADEA, the WLAD, or RCW 49.44.090.**

    1. <u>Title VII</u>

Under Title VII, it is an unlawful employment practice "for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d). Accordingly, in order for IEC to be subject to Title VII, it must be an employer, labor organization,[4] or joint labor-management committee.

The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees, or a bona fide private membership club, other than a labor organization, that is exempt from taxation under section 501(c) of Title 26 who has twenty-five or more employees. 42 U.S.C. § 2000e(b). The term "joint labor-management committee" is not defined. However, case law indicates that such a committee would include both management and labor components.[5] *See Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 535-36 (9th Cir. 1981) (noting that joint labor-management committee was established under an agreement that provided for a trust fund contributed to by the parties to the master collective bargaining agreements, and that it was composed of equal numbers of labor and management representatives); *see also Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 652 (7th Cir. 2006) (Section 2000e-2(d) "makes

---

[4] Salas argues that IEC is an "employer" and "joint labor-management committee." *See* Dkt. # 174 at 16-17. Since plaintiff does not argue that IEC is a "labor organization" within the meaning of Title VII, the court has not addressed such an argument.

[5] Plaintiff cites to 29 C.F.R. parts 29 and 30 for legal authority relating to Title VII. However, the regulations that contain the procedures established by the Equal Employment Opportunity Commission for carrying out its responsibilities in the administration and enforcement of Title VII is in 29 C.F.R. §1601 *et seq.* 29 C.F.R. § 1601.1.

both employers and unions answerable for the administration of joint training and apprenticeship programs."). The court believes that the term "joint labor-management committee" requires participation by both the employer and union.

IEC has presented the following undisputed evidence:

(1) IEC is "a nonprofit 501(c)(3) training organization that promotes and supports electrical apprenticeships through classroom training and partnering with electrical employers who provide jobs to participants." Dkt. # 159 (Estes Decl.) ¶ 4.

(2) IEC is a trade association representing independent electrical contractors in America, and is a stand-alone corporation. *Id.*

(3) "IEC is not a labor organization or union, and it is not associated with any national labor organization or unions. It is not a conference, general committee, joint or system board, or joint council that is subordinate to a national or international labor organization." *Id.*

(4) IEC's apprenticeship program is regulated by WAC 296-05 *et seq.*, and under WAC 296-05-303, IEC's apprenticeship committee is a non-joint committee that has employer representatives, but does not have a bona fide collective bargaining agent as a participant and is a program where there is no labor organization. *Id.* ¶ 5.

(5) At the time Salas was an apprentice, IEC had only five employees, and Salas was an apprentice, not an employee of IEC. *Id.* ¶ 6. Salas did not receive any form of compensation from IEC, but rather paid tuition each year to be an apprentice in the program, which included 800 classroom hours in the construction program and a minimum of 330 hours in the residential program. *Id.* The apprentice program is a four-year program that costs $1,300 per year in tuition. *Id.*

(6) In addition to training in the classroom, IEC refers the apprentices to independent electrical contracting companies, none of which are affiliated with any union. *Id.* ¶ 7.

(7) IEC is governed by a Board of Directors and administered by the Apprenticeship and Training Committee. *Id.* The committee is responsible for the day-to-day operations of the program and the board investigates violations of the Standards of Apprenticeship. *Id.*

(8) IEC charges electrical contractors, the employers, a fee for participation in the program based on the number of apprentices they have. Dkt. # 178 (Estes Decl. ISO Reply) ¶ 11. "Contractors do not 'own' IEC and they can come or go as they wish with no obligation to IEC or other contractors." *Id.*

(9) "The employers do not screen employees through IEC's apprenticeship committee." *Id.* ¶ 19. The employers request apprentices from IEC, telling IEC where the job is located, what level of apprentice they need, and how many they need. *Id.* IEC refers the apprentices from an "out of work list" that is developed and ranked based on when apprentices are laid off. *Id.*

Salas argues that Ms. Estes has filled out numerous "affidavits of experience" that certify that the apprentice electricians were employees of IEC. Dkt. # 174 at 21. The only evidence that might support this argument is one affidavit of experience that attests that Scott Manning has worked in Washington as an employee of IEC of Washington performing electrical installations. Dkt. # 175 at 124 (Ex. G to Salas Decl. in Opp'n to MSJ). Plaintiff has not provided the court with an affidavit from Ms. Estes that states that he was an employee of IEC, or directed the court to any other evidence that would create a genuine issue of material fact regarding whether he was an employee of IEC.[6] Nor would plaintiff have personal knowledge of whether Ms. Estes has filled out "numerous" affidavits. Fed. R. Evid. 601.

---

[6] For instance, plaintiff has not provided the court with any tax statements or other evidence that would demonstrate that he received payment from IEC or otherwise demonstrate employment status.

ORDER- 7

Under these undisputed facts,[7] the court finds that IEC is not an "employer" under Title VII because Salas was not an employee of IEC and IEC is a 501(c) entity that had (and continues to have) less than twenty-five employees. The court also finds that under the undisputed facts, IEC is not a "joint labor-management committee" because the program does not have a bona fide collective bargaining agent as a participant, is a program where there is no labor organization, is not associated with any labor organization or unions, and does not place its apprentices with employers that have union affiliation.

Accordingly, the court finds that IEC is not subject to Title VII.

2. ADEA

The ADEA prohibits discrimination on the basis of age by employers, employment agencies, or labor organizations.[8] 29 U.S.C. § 623(a)-(c). The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks. *Id.* § 630(b).

Based on the undisputed facts above, the court finds that IEC is not an "employer" because it has less than twenty employees and because Salas is not an employee of IEC. Additionally, plaintiff has not provided the court any evidence to support his argument that the employers and IEC are in close connection with the screening process where the

---

[7] On October 15, 2012, the court granted plaintiff's Rule 56(d) request. Dkt. # 72. Salas argued that IEC is an entity subject to Title VII, and that he needed more discovery regarding how IEC is organized and what role the employee representatives play. The court granted the Rule 56(d) request on those grounds. *Id.* Despite the opportunity to obtain such discovery, plaintiff did not propound any discovery on IEC relating to this issue (Dkt. # 177 (Hurl Decl.) ¶ 3), and has not presented any such evidence.

[8] Salas only argues that IEC is an "employer." Dkt. # 174 at 20-21. Since Salas does not argue that IEC is an "employment agency" or a "labor organization" within the meaning of the ADEA, the court has not addressed such an argument.

ORDER- 8

employers themselves screen the employees through the use of the IEC committee. Dkt. # 174 at 21.

Accordingly, the court finds that IEC is not subject to the ADEA.

### 3. WLAD and Unfair Employment Practices Statute (RCW 49.44.090)

IEC argues that plaintiff's state law claims under the WLAD (RCW 49.60) and Washington's age discrimination statute (RCW 49.44.090) must be dismissed because IEC is not considered an "employer." Dkt. # 157 at 14. Although Plaintiff has not addressed this argument, since he has consistently argued that IEC qualifies as an employer, the court will address this argument.

The WLAD prohibits employers from discriminating on the basis of age, national origin and race, among others. RCW 49.60.180. Under the WLAD, the term "employer" means "any person acting in the interests of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(11). Accordingly, for the reasons stated above, the court finds that IEC is not an "employer" within the meaning of RCW 49.60.040(11).

However, the employer size definition of RCW 49.60.040 does not apply outside of chapter 49.60, and thus does not apply to RCW 49.44.090. *Bennett v. Hardy*, 113 Wash. 2d 912, 926, 929, 784 P.2d 1258 (1990) (en banc). The Washington Supreme Court has recognized an implied cause of action under RCW 49.44.090 which makes age discrimination against an employee between the ages of 40 and 70 an unfair practice. *Id.* at 917. Nevertheless, plaintiff has not presented any evidence from which the court could conclude that a genuine issue of material fact exists with respect to whether IEC was his employer. The undisputed facts demonstrate that Salas did not receive any form of compensation from IEC, but rather paid tuition each year to be an apprentice in the program. The apprentice program included 800 classroom hours in the construction

program and a minimum of 330 hours in the residential program. The program is a four-year program that costs $1,300 per year in tuition. Under these facts, Salas is more akin to a student, rather than an employee.

Accordingly, the court finds that IEC is not subject to the WLAD or RCW 49.44.090.

**C. Disparate Treatment Discrimination (Title VII, WLAD, ADEA, RCW 49.44.090) and 42 U.S.C. § 1981**

At the summary judgment stage, where there is no direct evidence of discrimination (as here), courts use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9] *See Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012) (holding that *McDonnell Douglas* framework applies to ADEA claims on summary judgment even after *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (applying *McDonnell Douglas* to § 1981 claims); *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001) (applying *McDonnell Douglas* to age discrimination claim under WLAD and RCW 49.44.090), *overruled on other grounds by*, *McClarty v. Totem Elec.*, 157 Wash. 2d 214, 137 P.3d 844 (2006).

Under the *McDonnell Douglas* framework, plaintiff must offer evidence supporting a prima face case of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. If he succeeds, the burden shifts to defendant to produce evidence of a lawful motive for terminating him. *Id.* If defendant succeeds, plaintiff is obligated to produce evidence that defendant's stated lawful motive is pretext. *Id.* at 804. If there is sufficient evidence of pretext, the case must go to the jury. Title VII and the WLAD make it an

---

[9] Because Title VII of the Civil Rights Act of 1964 was the model for RCW 49.60, courts turn to decisions interpreting the federal provision when analyzing a claim under the WLAD as persuasive authority. *Xieng v. Peoples Nat. Bank of Washington*, 120 Wn.2d 512, 518 (1993) (citing *Oliver v. Pacific Northwest Bell Tel. Co.*, 106 Wn.2d 675, 678 (1986)).

unlawful employment practice to discriminate against any person in hiring, discharge, compensation or other terms or conditions of employment because of race or national origin, among others. 42 U.S.C. § 2000e-2(a); RCW 49.60.180. The ADEA and RCW 49.44.090 make it an unlawful employment practice to discriminate against any person in hiring, discharge, compensation or other terms or conditions of employment because of age. 29 U.S.C. § 623(a); RCW 49.44.090.

A prima facie case of employment discrimination alleging disparate treatment has four elements: (1) the employee is a member of a protected class, (2) the employee is qualified for the employment position or performing substantially equal work, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment.[10] *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Davis v. West One Auto. Group*, 140 Wn. App. 449, 459, 166 P.3d 807 (2007). In opposing summary judgment, an employee's evidentiary burden in establishing a prima facie case is not onerous. *Aragon*, 292 F.3d at 659 (The "requisite degree of proof necessary to establish a prima facie case for Title VII … on summary judgment is *minimal* and does not even need to rise to the level of a preponderance of the evidence.") (emphasis in original).

IES argues that plaintiff cannot establish a prima face case of discrimination by challenging the second and fourth prong. Dkt. # 166 at 10-11. The relevant facts are as follows:

(1) The project with IES for which Salas was hired began in July 2010 and was completed in February 2011. Dkt. # 168 (Overfield Decl.) ¶¶ 2-3.

---

[10] In the discharge context, courts have identified the second factor as plaintiff performing his job satisfactorily and the fourth factor as plaintiff being replaced by an individual outside the protected class. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (ADEA); *Hill*, 144 Wash. 2d at 188 (age discrimination under WLAD and RCW 49.44.090).

(2) Overfield, the General Superintendent for the project, hired Salas on August 2, 2010 as an apprentice to provide electrical services. *Id.* ¶ 6. Salas was a first-year apprentice, although he had thirteen or fourteen years of experience working in Alaska as an electrician. Dkt. # 167 at 74, 82-83 (Ex. 1 to Feider Decl., Salas Depo. at 206:5, 217:9-218:3).[11]

(3) During his new-hire training session, Salas received and reviewed various safety policies, including a policy that prohibits apprentices from working on energized equipment panels. Dkt. # 168 (Overfield Decl.) ¶¶ 7-12, Exs. G-M. Under the IES policies and procedures, an employee can be fired if performing hot work or committing other safety violations, and discipline is discretionary and depends on a variety of factors that is conducted on a case-by-case basis. *Id.* ¶ 11.

(4) In mid to late August 2010, IES was scaling down the project, and Overfield began to analyze the IEC-assigned apprentices. *Id.* ¶ 13. The foreman explained that Salas had communication problems, failed to follow directions, was a low-end performer, and that Salas had been repeatedly counseled about his performance. *Id.* Salas and Larod Lover were the most recent hires, and Overfield decided to terminate Salas on August 20, 2010 for unsatisfactory performance.[12] *Id.*, Ex. O.

(5) IES requires at least a week to implement a termination decision because payroll department must issue the final check which is provided on the date of termination. *Id.* ¶ 14.

(6) On August 24, 2010, Salas violated IES's safety policies and procedures when he opened a temporary panel box that was energized.[13] *Id.* IES's policies and procedures

---

[11] IES has presented evidence that Salas was classified as a third-year apprentice by IEC. Dkt.# 170-2 (Overfield Decl.) ¶ 6. The court views the evidence in the light most favorable to plaintiff, and plaintiff claims he was a first-year apprentice.

[12] Lover was terminated the following week. *Id.*

[13] Salas claims that his supervisor told him directly to get the ends of the wires that Lover and he had prepared from the prior week to prepare/get ready for hooking them up to the live

provide for immediate termination if an apprentice opens a panel cover. *Id.* Salas was terminated by his supervisor on the spot. *Id.*

(7) Days later, Overfield filled out an IEC apprenticeship review form stating that Salas was terminated for unsatisfactory performance. *Id.* ¶ 15, Ex. P.

(8) IES hired three individuals for the project after Salas was terminated, Chris Peters (hired September 8, 2010), Aaron Bestgen (hired October 13, 2010), and Bruce Fahber (hired October 13, 2010). Dkt. # 180 (Sealed Salas Decl.) at 5:13-17. Peters performed laborer work and was a first-year apprentice. *Id.*; Dkt. # 168 (Overfield Decl.) ¶ 15. Fahber and Bestgen were IEC-assigned apprentices, but they did not assume Salas's duties. Dkt. # 183 (2d Overfield Decl.) ¶ 4.

Presented with these facts, the court finds that plaintiff has failed to demonstrate a prima facie case of discrimination based on race, national origin, or age. First, the undisputed evidence demonstrates that Salas was not performing satisfactorily in the days leading up to August 24.[14] Additionally, Salas admits that he violated the hot work

---

panel, and that he did this by getting everything hooked up in preparation for making the final connection. Dkt. # 38 (Salas Decl.) at 2:25-28; # 175 (Sealed Salas Decl.) at 4:16-19. Salas admits that he opened the energized, temporary panel box, and that opening a panel without following the hot work policies is a violation. Dkt. # 167 at 119, 121-22 (Ex. 1 to Feider Decl., Salas Depo. at 275:7-22, 277:7-9, 278:22-24). Salas also concedes that he was not instructed to open the panel. *Id.* at 126(282:9-11). The court notes that prior to this concession, Salas seemingly disputed his own version of what he was instructed to do. In his declarations and in parts of his deposition, he stated that he was instructed to get the materials ready for hook up. Dkt. # 180 (Sealed Salas Decl.) at 3:16-19; Dkt. # 167 at 106-07 (Ex. 1 to Feider Decl., Salas Depo. 257:22-258:7). He also testified that he was instructed to open the panel. Dkt. # 167 at 121 (Ex. 1 to Feider Decl., Salas Depo. 277:12-20). However, in the next breath he essentially conceded that when he was told to prepare the materials for hook up, he understood that to mean open the panel box. *Id.* (277:21-278:13). Salas cannot create a genuine issue of material fact with his own apparent conflicting testimony.

[14] Plaintiff has presented evidence of his work with other employers. However, how he performed with employers other than IES is irrelevant to IES's conduct. Plaintiff has also provided a declaration from Terrance Strickland, a journeyman who only worked with Salas for 2 or 3 days when Salas was first hired. Dkt. # 173. Although Strickland stated that Salas "appeared to be a good worker" and that he "had no problems with his work," Strickland concedes he only worked with Salas for 2 to 3 days. This evidence does not create a genuine

policy, which subjected him to immediate discharge. Salas also concedes that his supervisor did not direct him to open the panel box.[15] Second, Salas has not presented any evidence that he was replaced by Peters, Bestgen, or Fahber. Peters was not an electrical apprentice, and Bestgen and Fahber were hired more than a month after Salas was terminated, and they did not assume Salas's duties.

Plaintiff also argues that he was not assigned a journeyman and was given heavier and harder work assignments than similarly situated individuals. With respect to the journeymen assignment, plaintiff's own evidence demonstrates that there was no policy of assigning a journeyman to a particular apprentice. Dkt. # 38-2 (Ex. B to Salas Decl.). Rather, the policy provided by plaintiff indicates that there must be a one-to-one ratio of apprentice to journeyperson. *Id.* Overfield confirms that the project had the state-required one-to-one apprentice-to-journeymen ratio. Dkt. # 168 (Overfield Decl.) ¶ 18. Plaintiff also admits that there were six journeymen to five apprentices. Dkt. # 167 at 98-99 (Ex. 1 to Feider Decl., Salas Depo. 240:7-241:16).

With respect to assigning heavier or harder work, plaintiff has not sufficiently identified relevant comparators. This court has previously held that "the 'similarly situated' analysis is stringent." *Blair v. Alaskan Copper & Brass Co.*, Case No. C07-1877-RAJ, 2009 WL 2029963, at *7 (W.D. Wash. July 10, 2009). In order to prevent the courts from "second-guessing" a reasonable employment decision, "[t]he comparator must be nearly identical to the plaintiff." *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004)). Plaintiff has failed to present any evidence of similarly situated apprentices employed by IES not in plaintiff's protected class who were treated more favorably. IES has identified four other IEC-assigned apprentices who worked on the project at the same time as Salas: John Hong, Brian Jones, Jan Eric Gustafson and

---

issue of material fact with respect to whether he was performing satisfactorily during the remaining time of his employment.

[15] Dkt. # 167 at 126 (Ex. 1 to Feider Decl., Salas Depo. at 282:9-11).

Lover. Dkt. # 168 (Overfield Decl.) ¶ 3. Hong, Jones, and Gustafson were fourth-year apprentices who could do more sophisticated work than first-year apprentices like Salas and Lover. Dkt. # 167 at 95-98 (Ex. 1 to Feider Decl., Salas Depo. 236:25-237:23, 239:23-240:6). Accordingly, Hong, Jones, and Gustafson are not similarly situated in all material respects. With respect to Lover, Salas testified that Lover was younger than him, was a first-year apprentice, did the same preparations as him, but was not terminated. Dkt. # 167 at 129-130 (Ex. 1 to Feider Decl., at 293:22-294:1). However, Salas admits that Lover did not have the same electrical experience as he did, and that Lover did not open the panel. *Id.* at 132-33, 134 (297:6-298:7, 300:10-21). There is also no evidence that any supervisor had "repeatedly counseled" Lover, or that Lover failed to follow directions, was considered a low-end performer, or had communication problems. *See* Dkt. # 168 (Overfield Decl.) ¶ 13. Additionally, Lover was terminated the week after Salas. *Id.* To the extent that Bestgen or Fabhers could be comparators, plaintiff simply has not provided the court with adequate evidence to determine whether they were similarly situated. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("individuals are similarly situated when they have similar jobs and display similar conduct").

Accordingly, the court finds that plaintiff has not made a prima facie showing of discrimination.

**D. Disparate Impact (WLAD, ADEA, RCW 49.44.090)**

To establish a prima facie case of disparate impact under Washington law, the plaintiff must demonstrate that (1) a facially neutral employment practice (2) falls more harshly on a protected class. *Oliver v. Pac. N.W. Bell Tel. Co., Inc.*, 106 Wash. 2d 675, 679, 724 P.2d 1003 (Wash. 1986). To establish a prima facie case of disparate impact under the ADEA, a plaintiff must (1) identify the specific employment practices of selection criteria being challenged, (2) show disparate impact, and (3) prove causation.

*Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990). The standard of proof necessary to establish a disproportionate impact upon a protected class is whether the plaintiff has produced evidence sufficient to justify an inference that the employment practices complained of caused a substantial disproportionate exclusionary impact on the protected class.[16] *Oliver*, 106 Wash. 2d at 681; *see Shutt v. Sandoz Crop Prot. Corp.*, 944 F.2d 1431, 1433 (9th Cir. 1991) ("statistical disparities must be 'sufficiently substantial that they raise … an inference of causation.'"). The primary means of proving a substantial disproportionate impact on a protected class is through the use of statistical evidence. *Oliver*, 106 Wash. 2d at 682; *see Rose*, 902 F.2d at 1424 ("plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."). However, statistical evidence derived from an extremely small sample has little predictive value, and is therefore unreliable. *Oliver*, 106 Wash. 2d at 682; *Shutt*, 944 F.2d at 1433 ("The statistical evidence may not be probative if the data are 'small or incomplete.'").

Here, IES only employed six electrical apprentices of the fourteen total employees during the project. Dkt. # 168 (Overfield Decl.) ¶ 5, Ex. F. Even if Salas had an expert to perform a statistical analysis, which he does not, the court finds that this sample size is too small to raise an inference of causation. *See Shutt*, 944 F.2d at 1432 (21 too small).

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS IEC's and IES's motions for summary judgment.[17] The Clerk is directed to enter judgment in favor of defendants and against plaintiff. The Clerk is also directed to terminate all pending motions.[18]

---

[16] The court has focused on the causation prong because it is dispositive, although IES has presented evidence that plaintiff has failed to satisfy the first prong as well.

[17] Salas has also argued that IEC never provided him with a hearing before terminating him from the apprenticeship program. However, it is undisputed that Salas was on probationary

Dated this 6th day of May, 2013.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

---

status because he was within the first 1600 hours of on-the-job training, and therefore could be removed from the program immediately without appeal rights under WAC 296-05. Dkt. # 159 (Estes Decl.) ¶ 7.

[18] Plaintiff's motions to seal do not comply with Local Civil Rule 5(g) where he has made no attempt to redact sensitive information and has filed the entire motions to seal under seal. Dkt. ## 175, 180, 181, 187. Local Rules W.D. Wash. CR 5(g). Nevertheless, the court shall keep the requested documents under seal given that plaintiff is proceeding *pro se*. The court GRANTS IES's motion to seal. Dkt. # 170.

ORDER- 17